Christian, J.,
delivered the opinion of the court:
The only question we have to determine in this case is, whether the decree of the circuit court of Fauquier abating the interest during the war upon the debts due to the appellants was erroneous?
This question arises upon the report of a commissioner made in the cause, and which is as follows:
“It appeared to the satisfaction of your commissioner, that the said Henry T. Dixon, from early in 1861 to the end of the late war, lived outside of the confederate lines; and that from August 1861, to July 1865^ he held a commission as additional paymaster in the United States volunteers (said commission having been produced before your commissioner), and during this entire time he (Dixon) was subject to the authority and •laws of the United States government.
“The creditors (the appellants et als.) herein mentioned were residents of the state of Virginia, then a state in ‘the Confederate States Government of America.’ Under this statement of facts your commissioner has not allowed interest upon the different debts due by said Dixon to the creditors herein, who were during the recent war living in the said confederate government.” , .
*543 The general principle that where debtor and creditor are separated during war, one residing on one side of belligerent line, and the other on the other side, interest during the period of the war must be abated, does not seem to be seriously controverted by the eounsel for the appellants. But if it had been, the general rule has already been declared by this court in Cole v. Bright, decided at the present term. It is true, in that case, the creditor left his debtor in Williams-burg then, and during the war, in the occupancy of the federal army, and came into the confederate lines. But the principle declared in that case was, that when debtor and creditor were separated by the belligerent lines the interest must be abated. I refer to that case and the following authorities to establish the doctrine, that interest during the war, where debtór and creditor are separated by belligerent lines, must be abated.
Hoare v. Allen, 2 Dall. R. 102; Mr. Jefferson’s letter in note McCall v. Turner, 1 Call. 115; Brewer v. Hastie & Co., 3 Call. 22; Conn & als. v. Penn & al., 1 Peters R. 523-26; Hanger v. Abbott, 6 Wall. U. S. R. 532; 1 Gall. R. 295; Griswold v. Waddington, 16 John. R. 438.
It is insisted, however, by the learned eounsel for the appellants, that this ease is taken out of the operation of the general rule above declared, because the debtor in this case was domiciled in Virginia up to the spring of 1861, and voluntarily left the state of Virginia and went to Washington, where he remained during the war; and that having thus voluntarily left his former domicil, he cannot claim the benefit of an abatement of interest due his creditor.
In my opinion this act of the debtor, though voluntary, cannot affect the status of the parties, or the legal rights and liabilities growing out of the laws of war. *544 He had the right upon the approach, or after the commencement of the civil war, to choose for himself' which side he would take, which cause he would espouse. In our late unhappy civil war many men at the north were constrained by family ties, by early education, by local attachments, by political proclivities, by earnest conviction of right and duty, to leave the north and unite their fortunes and their destinies with the south in that cause which they believed was the cause of the right of self-government and of the maintenance of civil liberty. And so in the south there were men who, from the same motives, chose to espouse the cause of the north and to uphold the integrity of the union. In all civil wars men must choose for themselves which side they may take. But I will pursue this line of discussion no further, contenting myself with a reference to the admirable opinion of my brother Staples, delivered to-day in the case of Walker v. Beauchler, for the true doctrines upon this subject.
The question here is not how the parties became separated—whether voluntary or not—but the whole question is, were they separated ? The question is not how the residence became changed, but where was the actual residence of the debtor and creditor during the war: were they during the war on different sides of the belligerent lines? If they were, no matter how they became thus separated, the question. is closed. Dixon was in Washington from the early spring of 1861 till, after the close of the war. The appellants were in the county of Fauquier. A line of bristling bayonets was between them. They were enemies; no intercourse between them was lawful; no payment could be made; no money could be transmitted. It is clear, therefore, that it is a case where the interest ought to be abated.
*545 But one of the counsel for the appellants objected to the decree of the circuit court upon another ground. He argues, with much ingenuity, that inasmuch as debts due to the appellants are secured upon land in the county of Fauquier; that the land is in a court of equity to be regarded as debtor, and not Dixon; and that therefore there should be no abatement of interest. A brief reference to the facts of the case will be a sufficient answer to this position. Dixon, by deed bearing date December 8th, 1837, conveyed a large estate, real and personal, to a trustee,—first, to secure his creditors, among whom were the appellants: which deed provides that the said trustee is to have and to hold the above granted property, real and personal, upon the following trusts and confidences unto them the said parties of the second part: 1st. To pay a debt due Aquila Glascock of about six thousand dollars; a debt to Frank Fred of seven thousand dollars, and all other debts due and owing by the said Henry T. Dixon, amounting as. it is supposed to about two thousand dollars; but, whether more or less, it is to be understood that all debts due by the said Dixon, enumerated or not enumerated, are to be paid; and to that end the said parties of the second part, trustees, shall collect all debts due to the said Dixon, and from time to time sell such of the property as may be necessary for that purpose, at public or private sale, as may be best. 2d. After the payment of all the debts due by the said Henry T. Dixon, for the sole, separate and exclusive use and benefit of the said Annie E. Dixon, wife of Henry T. Dixon, for and during her life, free from the contracts and liabilities of her said husband, or of any future husband.
It became necessary, therefore, in the court below, to enquire and ascertain what debts of the said Dixon *546 were still due; because Mrs. Dixon was entitled to the balance after payment of his debts. She filed her petition, claiming that her husband did not owe the interest on the debts secured which had accumulated during the war; and the circuit court sustained that claim.
How the land was merely the security for the debts due by Dixon; and after these debts were paid it belonged to Mrs. Dixon. It was competent to show what part had been paid, or that pai’t was not in fact due, or that no interest could be claimed for the period of four years. The debt was due by Dixon; the land was merely the security for its payment.
Upon the whole case, I am of opinion that there is no error in the decree of the circuit court, and that the same be affirmed.
Decree affirmed.